FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 12, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRANDON OGDEN,<br><br>                Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | No. 4:17-CV-05009-EFS<br><br>**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION** |

Before the Court, without oral argument, are cross-summary-judgment motions. ECF Nos. 12 & 13. Plaintiff Brandon Ogden appeals the Administrative Law Judge's ("ALJ") denial of benefits. *See* ECF No. 12. Commissioner of Social Security ("Commissioner"), as the Defendant, asks the Court to affirm the ALJ's determination that Mr. Ogden is not disabled and is capable of performing substantial gainful activity in a field for which a significant number of jobs exist in the national economy. *See* ECF No. 13. After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment and grants the Commissioner's Motion for Summary Judgment.

///

//

/

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 1

## I. **STANDARD OF REVIEW**

On review, the Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted). The Court will also uphold "such inferences and conclusions as the [ALJ] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

In reviewing a denial of benefits, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). That said, the Court may not substitute its judgment for that of the Commissioner. If the evidence supports more than one rational interpretation, a reviewing court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Further, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).

## II. **DISABILITY DETERMINATION**

A claimant who was eligible for supplemental security income benefits as a child during the month before he turned 18 must have his disability redetermined under the rules for disability used for adults. *See* 42 U.S.C. § 1382c(a)(3)(H)(iii). The decision-maker uses a five-step sequential evaluation process to determine whether an adult claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.

Step one usually assesses whether the claimant is currently engaged in a substantial gainful activity. *Id.* § 416.920(a)(4)(i). If he is, benefits would be denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker would proceed to step two. When assessing a redetermination based on the claimant reaching the age 18, however, this step is skipped. *See* 20 CFR 416.987(b)

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If he does not, the disability claim is denied. If he does, the evaluation proceeds to step three.

Step three compares the claimant's impairment to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to step four.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by determining the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, the claimant is not disabled. If the claimant cannot perform this work, the evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If he can, the disability claim is denied. If he cannot, the claim is granted.

The burden of proof shifts during this analysis. The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). At step five, the burden shifts to the Commissioner to show (1) the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### III. FACTS AND PROCEDURAL HISTORY[1]

Plaintiff Brandon James Ogden was born on December 27, 1994. *See* Administrative Record, ECF No. 9, ("AR") 83. As a child, he exhibited symptoms of ADHD and dysthymia (persistent depressive disorder). *See* AR 242. In May 1999, Mr. Ogden started receiving childhood disability

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 4

benefits. AR 111. Then, in May 2012, after being placed in special education classes for all subjects except physical education, Mr. Ogden graduated high school in only three years. AR 45–46, 80. He was "very active in school and after-school activities," including the basketball team. AR 80.

Throughout the years, Mr. Ogden has been diagnosed with pervasive developmental disorder, AR 223; dysthymia, AR 240; and a rule-out diagnosis of attention-deficit/hyperactivity disorder combined type, AR 256. Mr. Ogden has also been diagnosed with a number of physical conditions, including asthma, AR 223, and intestinal malabsorption, AR 312. Mr. Ogden further complains about migraine headaches and sleep problems. *See* AR 256.

Mr. Ogden is 5'6" tall and weighs approximately 160–190 pounds.[2] *See* AR 50, 281. Mr. Ogden lives with his girlfriend and her parents. AR 100. Mr. Ogden spends his days mostly watching television, playing video games, and caring for his son. AR 62, 100. He has no significant work history. AR 256.

On May 2, 2013, after he turned 18 years old, a disability examiner determined that Mr. Ogden was no longer disabled and ceased benefits effective May 1, 2013. AR 80, 111, 115. On August 7, 2013,

---

[2] The record shows that Mr. Ogden's weight was not regularly recorded and seemed to vary in recent years, possibly because of changes in medication, *see* AR 229 ("I just got off of it [the medication]. I couldn't eat on it. Then I lost a lot of weight. I lost like 70 lbs." (brackets in original) (internal quotation marks omitted)). For instance, according to medical records, Mr. Ogden weighed 161 pounds on February 22, 2012, AR 221; 171 pounds on July 10, 2012, AR 283; 165 pounds on January 17, 2013, AR 170; 186 pounds on March 6, 2013, AR 278; 192 pounds on April 9, 2013, AR 281; and 184 pounds on September 16, 2014, AR 292. Then, at the hearing on May 15, 2015, Mr. Ogden claimed that he weighed about 160 pounds, but there was no updated recorded weight. AR 50.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 5

Mr. Ogden requested a reconsideration hearing before an ALJ. AR 95. The hearing occurred on May 15, 2015, with ALJ Cecilia LaCara presiding in Anchorage, Alaska. AR 20. Mr. Ogden and counsel appeared via video from Kennewick Washington.[3] AR 38. During the hearing, Mr. Ogden gave testimony by video, and the vocational expert, Daniel A. LaBrosse, gave testimony by telephone. AR 37.

On June 10, 2015, the ALJ issued a decision finding Mr. Ogden not disabled. AR 31. At step one, the ALJ concluded that Mr. Ogden was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18. AR 22. At step two, the ALJ found that Mr. Ogden had the following severe impairments: history of pervasive development disorder and depression. AR 22–23. At step three, the ALJ determined that Mr. Ogden's limitations do not meet or medically equal the severity of any listed impairment. AR 23.

At step four, the ALJ found that Mr. Ogden has no past relevant work, AR 30, and that — despite his impairments — Mr. Ogden has the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to frequent stooping and crouching; limited to work involving one-to-two step tasks, which must be simple, routine, repetitive; and involve only superficial interaction with the general public and co-workers." AR 25.

---

[3] Mr. Ogden objected to conducting the hearing by video and asked for an in-person hearing, but the ALJ overruled his objection because it was submitted in excess of four months after the 30-day objection period. *See* AR 157.

At step five, based on testimony by the vocational expert in consideration of Mr. Ogden's age, education, work experience, and residual functional capacity, the ALJ found Mr. Ogden is capable of performing the following unskilled jobs that exist in significant numbers in the national economy: Laundry Worker I (DOT No. 361.684-014); Kitchen Helper (DOT No. 318.687-010); and Laborer, Stores (DOT 299.687-058). AR 30. As a result, the ALJ concluded that Mr. Ogden's disability had ended on May 1, 2013, and that he has not become disabled again since that date. AR 20.

The Appeals Council denied Mr. Ogden's request for review, AR 1, making the ALJ's decision the final agency action for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210. Mr. Ogden filed this lawsuit on February 10, 2017, appealing the ALJ's decision. ECF No. 1. The parties then filed the present summary-judgment motions. ECF Nos. 12 & 13.

### IV. ANALYSIS

In asking for the ALJ's decision to be reversed, Mr. Ogden brings three primary arguments: (A) at step two, the ALJ erred in not including all of Mr. Ogden's physical limitations; (B) the ALJ improperly rejected the opinions of some of Mr. Ogden's medical providers; and (C) at step five, she failed to identify specific jobs available in significant numbers that Mr. Ogden could perform in light of his specific functional limitations. *See* ECF No. 12 at 5. The Court addresses each challenge to the ALJ's decision in turn.

//

/

**A.  Physical Limitations**

Mr. Ogden first argues that the ALJ erred at step 2 by rejecting his physical complaints about "malabsorption, migraines, and asthma despite evidence that these impairments cause significant functional limitations." ECF No. 12 at 8. The Court, however, need not decide whether these complaints amount to severe impairments. The ALJ found that Mr. Ogden has other severe impairments that impose more than a minimal limitation on his ability to perform basic work activities. AR 22. Thus — even assuming that the ALJ erred in finding Mr. Ogden's malabsorption, migraines, and asthma did not constitute severe impairments — the omission of such impairments was harmless because at step 2 the ALJ nonetheless found in Mr. Ogden's favor.[4] *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

**B.  Medical-Provider Opinions**

Mr. Ogden next contends the ALJ committed reversible error by improperly weighing the medical opinions of Dr. Brad W. Leavitt, Dr. David Woolever, and a Walla Wall County Assessment. ECF No. 12 at 9.

"In disability benefits cases, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation omitted). There are three types of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be

---

[4] As addressed later in this Order, even if certain limitations do not amount to a severe impairment at step 2, an ALJ is still required to consider any such limitations throughout the remainder of the analysis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Id*.

If the opinion of a treating physician is contradicted by another physician, the ALJ may not reject the opinion without providing "specific and legitimate reasons" supported by "substantial evidence" in the record. *Id*. "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (internal quotations omitted).

1. Dr. Levitt

According to Mr. Ogden, the ALJ erred by giving Dr. Levitt's opinion only partial weight without specifying what evidence contradicted that opinion. *See* ECF No. 12 at 10. The ALJ, however, stated as follows:

> Dr. Levitt, the examining psychological consultant, indicated that the claimant "appears to currently be at least marginally capable of maintaining employment." Dr. Levitt further indicated that the claimant has limited ability in terms of cognitive and adaptive functioning, limited ability to sustain efforts over time, low abstract thinking abilities, fair to poor memory "(maybe selective)," limited ability to sustain attention, difficulty with social interactions, low levels of adaptability, and inability to make good decisions regarding treatment options, socialization, and jobs. However, Dr. Levitt assigned a GAF (global assessment of functioning) score of 60 — consistent with moderate symptoms or moderate difficulty in social, occupational, or school functioning.

> I note that Dr. Levitt's opinion regarding the claimant's limitations is somewhat inconsistent with his reported examination findings, neuropsychological test results, and the GAF score. Moreover, Dr. Levitt did not give an opinion regarding the severity of the claimant's "limited" abilities. Consequently, I give Dr. Levitt's assessment partial weight only to the extent it is consistent with the residual functional capacity.

AR 29 (internal record citations omitted).

The paragraphs quoted above demonstrate that the ALJ provided clear and convincing reasons for giving Dr. Levitt's opinion only partial weight. First, to the extent the Dr. Levitt's opinion can be read to suggest Mr. Ogden's limitations are sufficiently severe to render him unemployable, that opinion is contradicted by Dr. Levitt's own conclusion that Mr. Ogden was "at least marginally capable of maintaining employment." AR 257. Second, the ALJ noted that the tests used by Dr. Levitt, including the GAF, did not reveal more than moderate symptoms. AR 29. Third, the ALJ correctly notes that Dr. Levitt's opinion did not clearly lay out the severity of Mr. Ogden's limitations or what precise impact those limitations would have on employment.[5] And finally, the ALJ's RFC determination already largely reflected the broad limitations that were opined by Dr. Levitt, because it limited Mr. Ogden to work involving only superficial interaction with the general public and coworkers and one-or-two step tasks that are simple, routine, and repetitive. AR 25. The Court

---

[5] For instance, Dr. Levitt's report stated:
> Brandon's depressed mood and difficulties interacting socially will likely make it difficult to function adaptively on a job over time in a consistent manner. He is likely to have low levels of motivation and energy, low levels of job satisfaction, poor job performance, and high levels of absenteeism, as well as difficulty socializing in an effective manner. These effects are likely to wax and wane over time.

AR 257. Such statements only convey potential difficulties in a broad manner and do not provide particularized limitations.

therefore holds that the ALJ did not err by assigning limited weight to Dr. Levitt's opinion.

2. Dr. Woolever

As noted by Mr. Ogden, on March 3, 2015, Dr. Woolever filled out a Social Security Disability Medical Report in which he indicated that Mr. Ogden suffers from intestinal malabsorption, causing abdominal pain, diarrhea, weight loss. AR 312. Dr. Woolever opined that because of this, Mr. Ogden is unable to work, would need to miss four days or more per month if he did work, and would need to lie down for 30-90 minutes three times a day. AR 312-13. Mr. Ogden argues that the ALJ erred in rejecting Dr. Woolever's opinion regarding these limitations without giving adequate reasons for doing so. ECF No. 12 at 12.

Contrary to Mr. Ogden's contentions, however, the ALJ gave clear and convincing reasons for giving Dr. Woolever's opinion little weight:

> Dr. Woolever did not include a description of what objective evidence, other than an alleged 32 pound weight loss, upon which he relied in rendering his opinion. I note that the medical evidence of record does not reveal a 32 pound weight loss. Moreover, Dr. Woolever indicated that his first and last dates of treatment were in December 2014. I note that the medical evidence of record reveals a CT scan ordered by Dr. Woolever, which incidentally revealed no significant findings, but no actual treatment by Dr. Woolever. Furthermore, the medical evidence of record simply does not reveal treatment for symptoms related to intestinal malabsorption. Therefore, I find Dr. Woolever's assessment unsupported and give it little weight.

AR 29.

Moreover, an ALJ "need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.

2005); *see also* 20 C.F.R. § 416.927(c)(3) (weight assigned to medical source can depend on evidentiary support and the explanation provided).

Here, Dr. Woolever's opinion was brief, conclusory, and apparently based on a one-time treatment and only limited medical evidence. For instance, as the basis for his diagnosis, Dr. Woolever stated that Mr. Ogden had lost 32 pounds in six months, AR 312, but there was no record of such a drastic weight loss. Dr. Woolever noted that Mr. Ogden was being "worked up for intestinal absorption" and stated that Mr. Ogden's prognosis was "fair[,] depending on findings of [a] small intestinal biopsy," AR 313, but there is no indication that such a biopsy was ever performed. Nor is there any evidence that Dr. Woolever ever again saw Mr. Ogden after the one visit in December 2014. The ALJ noted these shortcomings, *see* AR 29, and therefore did not err in rejecting Dr. Woolever's opinion, *see Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (explaining the ALJ is entitled to weigh a treating physician's opinion by a number of factors, including the "length of the treatment relationship and the frequency of examination") (quoting 20 C.F.R. § 404.1527(c)(2)(i)).

**C.   Walla Walla County Assessment**

Mr. Ogden contends that the ALJ failed to address an intake assessment dated March 1, 2012, prepared by the Walla Walla County Department of Human Services (the "2012 Assessment"). ECF No. 12 at 13. Mr. Ogden points out that the assessment indicates Mr. Ogden's symptoms are consistent with a diagnosis of dysthymic disorder (persistent depressive disorder, DSM-5 300.4), and his symptoms are

sufficiently severe to cause a "marked impairment" in occupational functioning and/or during usual social activities. *See* ECF No. 12 at 13; *see also* AR 238. Mr. Ogden takes issue with the fact that neither the residual functional capacity assessment nor the hypotheticals posed by the ALJ to the vocational expert incorporated such limitations. *See* ECF No. 12 at 13.

> In making a determination of disability, the ALJ must develop the record and interpret the medical evidence. In doing so, the ALJ must consider the "combined effect" of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 416.923. However, in interpreting the evidence and developing the record, the ALJ does not need to "discuss every piece of evidence."

*Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

Here, although the ALJ did not assign a specific weight to the 2012 Assessment, it was not a medical opinion, and she was not required to do so. *See Howard*, 341 F.3d at 1012. Further, the ALJ clearly considered the 2012 Assessment while making her determination, as she cited to it multiple times.[6] *See* AR 23, 27–28. The 2012 Assessment listed no author, it was prepared while Mr. Ogden was still a minor child enrolled in high school, and its information was not particularly probative as to Mr. Ogden's functional abilities.[7] *See* AR

---

[6] On September 12, 2013, the disability examiner also considered the March 1, 2012 intake assessment in reaching the decision to affirm the May 2, 2013 cessation of benefits. *See* AR 80, 82.

[7] Notably, the evidence and analysis for determining whether an adult is disabled is significantly different from that for a minor. *Compare, e.g.*, 42 U.S.C. § 1382c(a)(3)(B) (An adult is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."), *with id.* at (a)(3)(C)(i) ("An individual under the age of 18 shall be considered disabled . . . if

229-39.  Further, the 2012 Assessment was subsequently updated to reflect further developments, such as on June 1, 2012, when it was noted that Mr. Ogden "was doing very well in school this year and even got enough[] credits completed to be able to graduate early." AR 242. As such, the ALJ did not err by declining to provide a detailed analysis of the 2012 Assessment; nor did she err by declining to adopt all the limitations arguably suggested therein. *See Howard*, 341 F.3d at 1012 (holding that an ALJ need not discuss "every piece of evidence" in order to demonstrate that the ALJ did not "selectively analyze" the evidence).  And the Court finds that substantial evidence in the record supports the ALJ's findings regarding Mr. Ogden's residual functional capacity.

Moreover, even assuming arguendo that the ALJ should have given greater import to the 2012 Assessment, there is no indication that doing so would have changed Mr. Ogden's residual functional capacity or what limitations should have been included in the hypotheticals posed to the vocational expert.  The 2012 Assessment simply did not indicate any limitations greater than those already included in the ALJ's RFC determination, which limited his potential work to simple, routine, repetitive, one-to-two step tasks with only superficial interaction with the general public and coworkers. *Cf.* AR 25, 229–39. Thus, had the ALJ somehow erred in her consideration of the Assessment, that error would be harmless. *See Molina*, 674 F.3d at 1111.

**D.  Available Jobs**

---

that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations . . . .").

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 14

Finally, Mr. Ogden argues that the ALJ "failed to meet her step five burden to identify specific jobs, available in significant numbers, consistent with Mr. Ogden's specific functional limitations." ECF No. 12 at 13. Mr. Ogden asserts that the vocational testimony on which the ALJ relied "was without evidentiary value because it was provided in response to . . . incomplete hypothetical[s]." ECF No. 12 at 13–14. The hypotheticals posed to the vocational expert were incomplete, according to Mr. Ogden, because they "failed to account for limitations set forth by Mr. Ogden's treating and examining providers." ECF No. 12 at 14.

As discussed above, the ALJ did not err in assigning the weights she did to Mr. Ogden's treating and examining providers. The ALJ was only required to include those limitations that were credible. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). And substantial evidence supported the ALJ's determinations regarding Mr. Ogden's RFC and the corresponding hypothetical questions. Thus, the Court holds that the ALJ satisfied her burden at step five by identifying specific jobs available in significant numbers that Mr. Ogden could perform given his residual functional capacity, age, education, and work experience. *See Delgado*, 722 F.2d at 572; *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

## V. **CONCLUSION**

In summary, the Court holds that the ALJ committed no reversible error in her assessment of Mr. Ogden's physical limitations at step

two; her consideration of the opinions of Mr. Ogden's medical providers; or her identification of specific jobs available at step five. In determining that Mr. Ogden is not disabled, the ALJ applied the proper legal standards, and her decision is supported by substantial evidence in the record. *See Delgado*, 722 F.2d at 572; *Brawner*, 839 F.2d at 433.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.
2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.
3. The Clerk's Office is to enter **JUDGMENT** in favor of the Commissioner.
4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this __ 11th __ day of December 2017.

                              s/Edward F. Shea
                              EDWARD F. SHEA
                Senior United States District Judge